NO. 24-1734

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

**MICHIGAN DEPARTMENT OF ENVIRONMENT, GREAT LAKES, AND ENERGY; DANA NESSEL, on behalf of the People of the State of Michigan,**

*Plaintiffs-Appellees*

*v.*

**GERALD R. FORD INTERNATIONAL AIRPORT AUTHORITY,**

*Defendant-Appellant*

---

Appeal from the United States District Court for the
Western District of Michigan
Hon. Jane M. Beckering, District Judge
Case No. 1:24-cv-00520

---

**Brief of Appellant Gerald R. Ford International Airport Authority**

---

John Sheehan
**EARTH & WATER LAW**
1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
(202) 280-6362

Charles M. Denton
Aaron D. Lindstrom
**BARNES & THORNBURG LLP**
171 Monroe Ave NW, Ste. 1000
Grand Rapids, Michigan 495503
(616) 742-3974

*Attorneys for Defendant-Appellant,*
*Gerald R. Ford International Airport Authority*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Sixth Circuit Rule 26.1, the Gerald R. Ford International Airport Authority makes the following disclosures:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?

Answer: No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

Answer: No.

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement.................................................i

Table of Authorities.................................................... v

Statement in Support of Oral Argument................................ xi

Jurisdictional Statement............................................... 1

Statement of Issues ................................................... 2

Statement of the Case ................................................. 3

A.   Statutory framework............................................ 6

1.   The FAA is responsible for aviation safety, including ground operations such as firefighting. ...... 6

2.   The FAA has contracted with the Authority, through grants, to assist the FAA with certain tasks, including safety and firefighting....................... 6

B.   The Authority assists the FAA as a contractor under grant assurances. ................................ 8

1.   The FAA contracts require the Authority to assist the FAA with aviation safety, including firefighting.................................. 9

2.   The FAA mandates that the Authority must use firefighting foam (AFFF) that contains PFAS and oversees the use of that foam................................ 10

C.   The State of Michigan sues the Authority in state court for the release of PFAS resulting from the use of the FAA-mandated firefighting foam....................... 16

D.   The Authority removes the case to federal court, and the State moves to remand. ................................ 17

ii

E.    The district court issues a first remand order, finding that the Authority presented a colorable government-contractor defense but nonetheless concluding that the Authority was not acting under the FAA's supervision..... 18

F.    The remanded case proceeded in state court, while related cases brought by the State proceeded in federal court in the AFFF multidistrict litigation. .......................... 20

G.    The third-party-defendant AFFF manufacturers remove the case back to the district court, and the State moves to remand its claims against the Authority. ........................................................................... 22

H.    The district court severs and again remands the State's claims to state court. ............................................................. 24

I.    The prior panel affirms the remand, concluding the Authority was not acting under the FAA. .......................... 27

Summary of Argument ....................................................................... 28

Standard of Review ............................................................................ 31

Argument ............................................................................................. 32

I.    The Authority is not merely complying with the law; it is acting under the FAA as a government contractor assisting the FAA in carrying out firefighting safety. ............................... 32

A.    The Authority raised a colorable federal defense, namely the government-contractor defense. ...................... 33

B.    Because it is a government contractor for the FAA for firefighting, the Authority was "acting under" the FAA in its firefighting activities. .................................................. 40

C.    The State's suit, which ties PFAS releases to the FAA-mandated AFFF, relates to the FAA requiring the Authority to use the PFAS-containing AFFF ..................... 50

II.     The district court abused its discretion by severing the
        claims and declining to exercise supplemental jurisdiction........ 57

        A.      The district court abused its discretion by severing the
                substantially overlapping third-party contribution
                claims and issues, such as causation, which resulted in
                the Authority having to litigate the same issues in
                Michigan and South Carolina. ............................................. 57

        B.      The district court abused its discretion by declining
                supplemental jurisdiction. .................................................. 64

                1.      The district court failed to exercise its discretion
                        as to the predominance condition, as it simply
                        stated its conclusion without providing any
                        reasoning. .................................................................. 65

                2.      The district court abused its discretion in
                        concluding that the ordinary circumstances of
                        removal satisfy the "exceptional circumstances"
                        condition. .................................................................. 67

Conclusion ........................................................................................... 68

Certificate of Compliance ..................................................................... 70

Certificate of Service ........................................................................... 71

Addendum – Designation of Record Documents ................................... 72

# TABLE OF AUTHORITIES

## CASES

*Albrecht v. A.O. Smith Water Prod.*,
2011 WL 5109532 (S.D.N.Y. Oct. 21, 2011) ........................................ 36

*Baker v. Atl. Richfield Co.*,
962 F.3d 937 (7th Cir. 2020) ................................................................ 51

*Bennett v. MIS Corp.*,
607 F.3d 1076 (6th Cir. 2010) ...................................................... passim

*Bowles v. Russell*,
432 F.3d 668 (6th Cir. 2005) ................................................................ 4

*Boyle v. United Technologies Corp.*,
487 U.S. 500 (1988) ......................................................... 19, 34, 36, 38

*Carlsbad Tech., Inc. v. HIF Bio, Inc.*,
556 U.S. 635 (2009) ............................................................................ 31

*Caver v. Cent. Alabama Elec. Coop.*,
845 F.3d 1135 (11th Cir. 2017) ........................................................... 52

*Certain Interested Underwriters at Lloyd's, London, England v. Layne*,
26 F.3d 39 (6th Cir. 1994) ................................................................... 31

*City of Santa Monica v. FAA*,
631 F.3d 550 (D.C. Cir. 2011) ............................................................. 38

*Cooper v. Glen Oaks Healthcare LLC*,
No. 22-5570, 2023 WL 165961, (6th Cir. Jan. 12, 2023) .................... 66

*Cuomo v. Crane Co.*,
771 F.3d 113 (2d Cir. 2014) ................................................................ 39

*Defense Distributed v. Bruck*,
30 F.4th 414 (5th Cir. 2022) ........................................................ passim

*DeFiore v. SOC LLC*,
85 F.4th 546 (9th Cir. 2023) ............................................................... 52

*Dickson v. Direct Energy, LP,*
   69 F.4th 338 (6th Cir. 2023) ............................................................. 32

*Doe v. BJC Health Sys.,*
   89 F.4th 1037 (8th Cir. 2023) ..................................................... 40, 41

*Doe v. Univ. of Michigan,*
   78 F4th 929 (6th Cir. 2023) ......................................................... 5, 32

*Foman v. Davis,*
   371 U.S. 178 (1962) .......................................................................... 66

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton,*
   841 F.3d 133 (2d Cir. 2016) .............................................................. 38

*Goldstein v. Chestnut Ridge Volunteer Fire Co.,*
   218 F.3d 337 (4th Cir. 2000) ............................................................ 48

*Greene v. B.F. Goodrich Avionics Systems, Inc.,*
   409 F.3d 784 (6th Cir. 2005) ............................................................ 48

*In re Aqueous Film-Forming Foams Prod. Liab. Litig.,*
   No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357 (D.S.C. Sept. 16,
   2022) .................................................................................. 13, 22, 37

*In re Commonwealth's Motion to Appoint Couns. Against or Directed to
   Def. Ass'n of Philadelphia,*
   790 F.3d 457 (3d Cir. 2015) .............................................................. 51

*Janusaitis v. Middlebury Volunteer Fire Dep't,*
   607 F.2d 17 (2d Cir. 1979) ............................................................... 48

*Jefferson Cnty., Ala. v. Acker,*
   527 U.S. 423 (1999) .................................................................... 33, 50

*Latiolais v. Huntington Ingalls, Inc.,*
   951 F.3d 286 (5th Cir. 2020) ........................................................ 41, 50

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014) .................................................................... 5, 32

*Liaw Su Teng v. Skaarup Shipping Corp.,*
  743 F.2d 1140 (5th Cir. 1984) ........................................ 58, 60

*Mays v, City of Flint, Mich.,*
  871 F.3d 437 (6th Cir. 2017) ............................... 27, 31, 33, 46

*Minnesota by Ellison v. Am. Petroleum Inst.,*
  63 F.4th 703 (8th Cir. 2023) ............................................... 52

*Minor v. Comm'r of Soc. Sec.,* 826 F.3d 878 (6th Cir. 2016) .................. 66

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374 (1992) ............................................................. 51

*Nessel v. 3M Company,*
  No. 1:21-cv-00205 (D.S.C. June 6, 2021) ...................... 22, 37

*Nessel v. Chemguard,*
  No. 1:20-cv-1080, 2021 WL 744683 (W.D. Mich. Jan. 6, 2021) .......... 22

*Nessel v. E. I. Du Pont De Nemours and Company,*
  No. 1:20-cv-00787 (W.D.Mich.) ........................................ 21

*New Albany Main St. Properties v. Watco Companies, LLC,*
  75 F.4th 615 (6th Cir. 2023) .............................................. 48

*Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.,*
  647 F. App'x 619 (6th Cir. 2016) ............................. 42, 53, 54

*Parchman v. SLM Corp.,*
  896 F.3d 728 (6th Cir. 2018) ............................................. 31

*Rose v. Hartford Underwriters Ins. Co.,*
  203 F.3d 417 (6th Cir. 2000) ............................................. 66

*Sawyer v. Foster Wheeler LLC,*
  860 F.3d 249 (4th Cir. 2017) ................................. 41, 44, 51

*SPA Rental, LLC v. Somerset-Pulaski Cnty. Airport Bd.,*
  884 F.3d 600 (6th Cir. 2018) ............................................. 39

*Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,*
   5 F.3d 28 (3d Cir. 1993) ...................................................... 59, 60, 61, 63

*Tate v. Boeing Helicopters,*
   55 F.3d 1150 (6th Cir. 1995) ............................................................ 36

*Watson v. Philip Morris Companies, Inc.,*
   551 U.S. 142 (2007) ................................................................. passim

*Willingham v. Morgan,*
   395 U.S. 402 (1969) .......................................................................... 34

## STATUTES

28 U.S.C. § 1367(c) ...................................................................... 24, 65

28 U.S.C. § 1367(c)(4) .......................................................................... 67

28 U.S.C. § 1442(a) ...................................................................... 20, 33

28 U.S.C. § 1442(a)(1) ................................................................. passim

28 U.S.C. § 1447(d) ............................................................................... 1

28 U.S.C. § 1653 ................................................................................. 23

49 U.S.C. § 106(g) ......................................................................... 6, 47

49 U.S.C. § 40101(c) ............................................................................. 6

49 U.S.C. § 44706 ..................................................................... 9, 10, 12

49 U.S.C. § 44706(b) ...................................................................... 6, 47

49 U.S.C. § 44706(b)(1) ...................................................................... 10

49 U.S.C. § 47101 ............................................................................... 38

49 U.S.C. § 47104(a) ............................................................................. 7

49 U.S.C. § 47104(b) ............................................................................. 7

49 U.S.C. § 47107(a) ............................................................................. 7

49 U.S.C. § 47108 ...................................................................... 7

49 U.S.C. § 47144 .................................................................... 38

49 U.S.C. chap. 447 .................................................................. 6

MCL 259.135 ............................................................................ 38

MCL 259.135(2) ........................................................................ 8

## OTHER AUTHORITIES

18 Oxford English Dictionary 948 (2d ed.1989) ..................... 40

Advisory Circular 150/5210-6D, *Aircraft Fire Extinguishing Agents*, https://www.faa.gov/ documentLibrary/media/Advisory_Circular/AC_150_5210-6D.pdf ....12

*Aqueous Film-Forming Foam (AFFF)* Fact Sheet (Oct. 2018), https://www.maine.gov/mema/sites/maine.gov.mema/files/inline-files/ITRC%20AFFF%20Fact%20Sheet.pdf ........................................ 35

CertAlert 11-02, *Identifying Mil-Spec Aqueous Film Forming Foam (AFFF)* ..................................................................................... 13

CertAlert No. 06-02, *Aqueous Film Forming Foam (AFFF) Meeting MIL-F-24385* ..................................................................... 12

CertAlert No. 16-05, *Update on Mil-Spec Aqueous Film Forming Foam (AFFF)* (Sept. 1, 2016) ............................................... 12, 13, 35, 44

CertAlert No. 19-01, *Aqueous Film Forming Foam (AFFF) Testing at Certificated Part 139 Airports* (Jan. 17, 2019) ........................... passim

CertAlert No. 23-07, *Availability of Fluorine Free Foam (F3) on the Navy's Qualified Products List (QPL)*, https://www.faa.gov/sites/faa.gov/files/part_139_cert_alert_23_07_F3_ Release.pdf ......................................................................... 37

EPA Memo, *PFAS Enforcement Discretion and Settlement Policy under CERCLA* (Apr. 19, 2014), https://www.epa.gov/ system/files/documents/2024-04/pfas-enforcement-discretion-settlement-policy-cercla.pdf................................................................ 16

FAA Airport Improvement Program (AIP) Annual Reports of Accomplishments, https://www.faa.gov/ airports/aip/grant_histories/annual_reports....... 8

Https://dictionary.cambridge.org/us/dictionary/english/contractor ....... 46

Https://www.faa.gov/ airports/aip/grant_assurances ........................... 7, 8

**RULES**

Fed. R. App. P. 28(a)(4)(A) ........................................................................ 1

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

The Authority respectfully requests oral argument. It believes that oral argument will help the Court understand the application of 28 U.S.C. § 1442(a)(1) to the factual circumstances of this case and the substantial federal interest in this matter, and the Authority would like the opportunity to respond to any questions the Court may have about the basis for federal jurisdiction.

## JURISDICTIONAL STATEMENT

The district court's jurisdiction is based on 28 U.S.C. § 1442(a)(1), which authorizes persons acting under a federal officer, as the Gerald R. Ford International Airport Authority was acting here, to remove a case from state court. The proper application of § 1442(a)(1) is the subject of this appeal. The Authority sets out the facts establishing § 1442(a)(1)'s applicability in the body of this brief. Fed. R. App. P. 28(a)(4)(A).

The district court granted the State's motion for severance and remand on August 6, 2024, severing the State's claims against the Authority from the related third-party claims for contribution, which remain in federal court, and remanding the State's claims to state court. (Order, RE 37, PageID.597, 609.) The Authority timely filed its notice of appeal of that remand order on August 23, 2024. (Notice, RE 43, PageID.700.)

This Court has jurisdiction under 28 U.S.C. § 1447(d), which provides that "an order remanding a case to the State court from which it was removed pursuant to section 1442 or 1443 of this title shall be reviewable by appeal or otherwise."

1

## STATEMENT OF ISSUES

As a government contractor, the Authority assists the Federal Aviation Administration by performing specific tasks at the Authority's commercial airport in exchange for grants from the FAA. These tasks include the Authority testing, maintaining, and using firefighting equipment while using the specific firefighting foam mandated by the FAA. The State has brought environmental claims against the Authority because that FAA-mandated firefighting foam, manufactured by the third-party defendants, contains chemicals commonly known as PFAS (per- and polyfluoroalkyl substances).

The questions presented are:

1.    Is the Authority acting under the FAA, a federal officer, as a government contractor and so entitled under 28 U.S.C. § 1442(a)(1) to remove the case?

2.    Alternatively, did the district court abuse its discretion by severing the State's claims from the Authority's third-party contribution claims and by declining to exercise supplemental jurisdiction over the State's claims?

## STATEMENT OF THE CASE

This appeal arises under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), which entitles any person "acting under" a federal officer to remove the case to a federal forum when sued for conduct "relating to" any act under color of federal office. The U.S. Supreme Court has recognized that federal contractors are *acting under* federal officers because "[t]he assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007).

The State of Michigan is suing the Authority for conduct that the Authority undertook while *acting under* its FAA contract. Specifically, the FAA contracted with the Authority through federal grant assurances to maintain and operate airport safety equipment, including firefighting equipment, in exchange for grant funding. And the Authority's use of that firefighting equipment *relates to* the State's lawsuit, because the FAA required the Authority to use and test a particular firefighting foam that contains hazardous chemicals known as PFAS, and the State's suit arises directly from the release of those

3

PFAS chemicals during the FAA-mandated use of that firefighting foam. Despite their prior knowledge, neither the firefighting foam manufacturers nor the FAA ever warned the Authority about environmental concerns related to PFAS.

The district court and a prior panel both failed to recognize that because the Authority was a government contractor and was assisting the FAA in completing government tasks, it was also *acting under* the FAA when using the FAA-specified firefighting foam.

The mention of a prior panel brings up the unusual procedural posture of this appeal: it involves a second remand order (because a different party removed after the first remand). The Authority moved to consolidate appeals of the first and second remand orders, but the State opposed consolidation, and this Court denied consolidation. This Court then affirmed the first remand order.

This panel is not bound by the prior panel's decision because it is unpublished, nor is it required to follow it as the law of the case. Not only is the law-of-the-case doctrine "discretionary when applied to . . . the same court's own decisions," *Bowles v. Russell*, 432 F.3d 668, 677 (6th Cir. 2005), the doctrine does not apply at all to jurisdictional

questions: "[e]ven when a prior appellate panel has made a jurisdictional ruling, a subsequent panel may still conduct an independent assessment of jurisdiction because the 'law of the case doctrine does not foreclose reconsideration of subject-matter jurisdiction.'" *Doe v. Univ. of Michigan*, 78 F4th 929, 940 (6th Cir. 2023).

Given that "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging," *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (internal quotation marks omitted), this Court must take a fresh look at the jurisdictional question, particularly because the prior panel decision failed to properly apply the Supreme Court's guidance in *Watson*.

Further, the district court abused its discretion in severing the State's claims and declining to exercise supplemental jurisdiction. As a result of that decision, half of the case (the Authority's contribution claims against the foam manufacturers) is proceeding in multidistrict litigation in South Carolina, while the other half (the State's claims against the Authority relating to its use of the foam) is proceeding in state court in Michigan.

### A.    Statutory framework

#### 1.    The FAA is responsible for aviation safety, including ground operations such as firefighting.

Congress tasked the FAA Administrator with responsibility for aviation safety. 49 U.S.C. § 106(g) (delegating specific responsibilities "related to aviation safety" to the FAA Administrator, including duties set out in § 40101(c) and in chapter 447); *see also* 49 U.S.C. § 40101(c) (duty to consider "general safety" in "commercial and general aviation" when setting policy); 49 U.S.C. chap. 447 (entitled "Safety Regulation").

The FAA's safety duties include responsibility for ground operations, including firefighting. For example, under the chapter on safety regulation, the FAA cannot issue an airport operating certificate unless the certificate "contain[s] terms necessary to ensure safety in air transportation," including conditions related to "*operating and maintaining* adequate safety equipment, including *firefighting* and rescue *equipment* . . . ." 49 U.S.C. § 44706(b) (emphasis added).

#### 2.    The FAA has contracted with the Authority, through grants, to assist the FAA with certain tasks, including safety and firefighting.

Congress specifically provided that the FAA may enter into contracts with airports to assist the FAA in carrying out its safety

responsibilities: "To maintain a safe and efficient nationwide system of public-use airports that meets the present and future needs of civil aeronautics, the Secretary of Transportation may make project grants under this subchapter from the Airport and Airway Trust Fund." 49 U.S.C. § 47104(a). Under project grants, the federal government "incurs obligations to make grants"—*i.e.,* to provide funds—to the grant-recipient airports, 49 U.S.C. § 47104(b), who in turn incur the obligations to perform written promises known as grant assurances, 49 U.S.C. § 47107(a), to complete tasks that assist the FAA in carrying out its responsibilities. *See also* 49 U.S.C. § 47108 (entitled "Project grant agreements," providing that offers to grantees "shall state the obligations to be assumed by the sponsor and the maximum amount the Government will pay for the project").

The FAA provides grants to airports under its Airport Improvement Program. As the FAA explains, "[w]hen airport owners or sponsors, planning agencies, or other organizations accept funds from FAA-administered airport financial assistance programs, they must agree to certain obligations (or assurances)." Https://www.faa.gov/airports/aip/grant_assurances. "These obligations require the recipients

7

to maintain and operate their facilities safely and efficiently and in accordance with specified conditions." *Id.*

## B. The Authority assists the FAA as a contractor under grant assurances.

The FAA has repeatedly entered into these contracts with the Authority, since the Authority was created in 2015. *See* https://www.faa.gov/ airports/aip/grant_histories/annual_reports; *e.g.*, https://www.faa.gov/sites/faa.gov/files/airports/aip/grant_histories/ annual_reports/aip-grants-awarded-by-state-fy-2015.pdf at 58. A few of these contracts are included in the record as examples. (2020 FAA Contract, RE 21-4, PageID.323–62; 2021 FAA Contract, RE 21-5, PageID.366–408.)

The Authority also has related contracts with the Michigan Department of Transportation (MDOT), because Michigan law requires that FAA contracts be submitted through the State and that the contract payments flow through the Michigan Treasury. *See* MCL 259.135(2), (3).

These facts about the MDOT contracts are significant because even though the State has contracts with the Authority that specifically relate to the FAA contracts (*e.g.*, MDOT Contract, RE 21-6,

8

PageID.410–30; MDOT Contract, RE 21-7, PageID.432–55), the State

nonetheless repeatedly represented to the district court that "GFIAA is

not a government contractor" (*e.g.*, State Br., RE 7 (No. 1:23-cv-1068),

PageID.61, 74), before eventually admitting during the first appeal in

this Court that "grant agreements are contractual in nature." (State

Appellee Br. (No. 24-1085) at 34.)

1.    **The FAA contracts require the Authority to assist the FAA with aviation safety, including firefighting.**

Returning to the Authority's contracts with the FAA, these

contracts recite that the "consideration" for the Authority's "acceptance

of this Offer" includes "the benefits to accrue to the United States and

the public" from the Authority's "compliance with the Grant

Assurances" and other conditions in the contract. (2020 FAA Contract,

RE 21-4, PageID.325.) These assurances obligate the Authority to have

"all the *safety equipment* required for certification of such airport under

section 44706 of Title 49 and to operate the airport "at all times in a

safe and serviceable condition . . . ." (*E.g.*, 2020 FAA Contract, RE 21-4,

PageID.339, 340 (emphasis added); 2021 FAA Contract, RE 21-5,

PageID.384, 386.) The safety equipment required by these contractual

9

provisions includes "firefighting and rescue equipment," which the Authority must also operate and maintain. *See* 49 U.S.C. § 44706(b)(1) (describing required safety equipment).

> **2.    The FAA mandates that the Authority must use firefighting foam (AFFF) that contains PFAS and oversees the use of that foam.**

Under these contracts, the Authority has an obligation to maintain "all the safety equipment required for certification of such airport under 49 U.S.C. § 44706 . . . ." (*E.g.*, 2020 FAA Contract, RE 21-4, PageID.339, 340.) The FAA oversees and supervises this contractual obligation by specifying what safety equipment (and specifically, what type of firefighting foam) must be used, by conducting testing and inspections to verify compliance, and by requiring the Authority to document the testing and inspections for review by FAA inspectors.

Significantly, the requirement to use a specific type of firefighting foam appears in advisory circulars and in CertAlerts, which the FAA itself states are *non-binding* guidance. FAA, *Advisory Circular Checklist and Status of Other FAA Publications*, https://www.faa.gov/ documentLibrary/media/Advisory_Circular/AC_00.2-13.pdf ("The FAA issues advisory circulars to inform the aviation public in a systematic

10

way of *nonregulatory* material. Unless incorporated into a regulation by reference, the contents of an advisory circular are *not binding* on the public.") (emphasis added); *see also, e.g.*, CertAlert No. 19-01, *Aqueous Film Forming Foam (AFFF) Testing at Certificated Part 139 Airports* at 1 (Jan. 17, 2019), RE 10-3 (No. 1:23-cv-1068), PageID.122 (CertAlert stating that "[t]his guidance is not legally binding in its own right."). Thus, it is FAA direction *in the grant assurances themselves* that imposes the obligation to use the specific firefighting foam at issue in this case, because the grant assurances include the promise that the Authority "will carry out the project in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, the advisory circulars . . . ." (2020 FAA Contract, RE 21-4, PageID.348.)

The FAA specifications require the Authority to use a firefighting foam known as aqueous film-forming foam (AFFF). This foam, used by the military since at least the 1960s, extinguishes liquid fuel fires, suppresses fuel vapors, and creates a safer environment for airport firefighters and the public exiting aircraft. (Military Specification for AFFF, RE 10-2 (No. 1:23-cv-1068), PageID.109–120.) The FAA, through

11

its advisory circulars and "CertAlerts," has long required airports certified under § 44706 to use AFFF that meets the military specification. *See* Advisory Circular 150/5210-6D, *Aircraft Fire Extinguishing Agents*, https://www.faa.gov/documentLibrary/ media/Advisory_Circular/AC_150_5210-6D.pdf  at 4 ("AFFF agents must meet the requirements of Mil-F-24385F"). For example, the 2006 CertAlert stated that "[a]ny AFFF purchased after July 1, 2006 by an airport operator certificated under Part 139 must meet the Mil Spec as mentioned above." CertAlert No. 06-02, *Aqueous Film Forming Foam (AFFF) Meeting MIL-F-24385*, RE 19-1 (No. 1:23-cv-1068), PageID.190); *see also* CertAlert No. 16-05, *Update on Mil-Spec Aqueous Film Forming Foam (AFFF)* at 2 (Sept. 1, 2016) ("Airport operators must ensure any AFFF purchased after July 1, 2006, meets MilSpec standards."), https://www.faa.gov/sites/ faa.gov/files/part-139-cert-alert-16-05-Mil-Spec-AFFF-website-update.pdf. The 2016 CertAlert further instructed airports to "check the [Department of Defense] [Qualified Product Database] web site before each AFFF purchase," to ensure that the AFFF used at the airport was listed in the military's Qualified Products Database. *Id.* at 2–3. This 2016 guidance superseded

CertAlerts from 2006 and 2011, each of which had also required using AFFF that met military specifications. *Id.* at 1, 3 (referencing superseded CertAlert 06-02, *Aqueous Film Forming Foam (AFFF) Meeting MIL-F-24385*, and CertAlert 11-02, *Identifying Mil-Spec Aqueous Film Forming Foam (AFFF)*).

Further, all the AFFF that were listed in the government's database because they met military specifications necessarily contained PFAS. *See, e.g.*, *In re Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *1 (D.S.C. Sept. 16, 2022) (suit against AFFF manufacturers based on allegations "that the AFFF products at issue in this litigation contain PFOA and PFOS"). While other firefighting foams existed in the marketplace, the only AFFF formulations that also met the military specification were those products that necessarily contained PFAS as the critical ingredient for the foam.

As to FAA oversight, the FAA directly supervised the use of this firefighting foam, including discharges of the foam at the Grand Rapids airport. Airports operating under Part 139 must maintain and test their firefighting systems, "must maintain proper documentation of the

testing" of their aircraft rescue and firefighting vehicles, and must "have [the documentation] available during the [airport's] periodic [safety] inspection." CertAlert No. 19-01, *Aqueous Film Forming Foam (AFFF) Testing at Certificated Part 139 Airports* at 1 (Jan. 17, 2019), RE 10-3 (No. 1:23-cv-1068), PageID.122.) The FAA guidance further stated that "[i]f the airport operator does not conduct testing within these intervals, *the FAA will require the airport operator to discharge AFFF during the airport's periodic inspection . . . .*" *Id.* (emphasis added). According to the FAA, "[t]esting the system is an integral part of maintaining [aircraft rescue and firefighting] vehicles in optimal condition for an emergency response." (*Id.* at PageID.122–23.)

Consistent with these practices, the Authority's then–public-safety and operations director testified that the "FAA has required for many years that [the Authority] only use AFFF with PFAS in firefighting trainings, equipment testing, calibrations, FAA inspections, and in response to fire emergencies," that "the FAA inspector reviews GFIAA's mandated records of AFFF foam discharges," and that the inspector "has the authority to require GFIAA to spray AFFF onto the ground . . . ." (Carr Affidavit, RE 21-8, PageID.460 ¶¶ 9–10.)

14

Before the 2019 CertAlert, the FAA had not approved a method for testing the ability to discharge AFFF other than by dispensing it onto the ground. But the 2019 CertAlert explained that the FAA would begin allowing airports to conduct their testing by using "AFFF testing equipment that do not require foam to be dispensed onto the ground." CertAlert No. 19-01, RE 10-3 (No. 1:23-cv-1068), at PageID.123; *see also id.* (identifying "three different types of AFFF testing equipment that do not require foam to be dispensed onto the ground" and stating that "the FAA will accept use of these systems").

The reason for this shift was that the FAA recognized "growing concern over the use and discharge of AFFF at airports" because "[t]he molecular composition of specification MIL-PRF-24385 contains a chemical compound"—*i.e.*, PFAS—"found to potentially contaminate drinking water." *Id.* As of 2019, the FAA did not allow using fluorine-free foams, because "the fluorine-free foams on the market . . . are not able to provide the same level of fire suppression, flexibility, and scope of usage as MIL-PRF-24385 AFFF firefighting foam." *Id.* The Authority has used the FAA-approved testing equipment and has not discharged AFFF since 2019.

Additionally, EPA recently concluded that it would not hold airports responsible for response costs under CERCLA (the Comprehensive Environmental Response, Compensation, and Liability Act) precisely because the FAA had mandated the airports' use of AFFF. Specifically, "EPA does not intend to pursue, based on equitable factors, PFAS response actions or costs under CERCLA against . . . [p]ublicly [o]wned [a]irports" because "[m]any airports have been *required* by Federal Aviation Administration regulations to maintain adequate amounts of AFFF to address fire emergencies." EPA Memo, *PFAS Enforcement Discretion and Settlement Policy under CERCLA* at 6–7 (Apr. 19, 2024), https://www.epa.gov/system/files/ documents/2024-04/pfas-enforcement-discretion-settlement-policy-cercla.pdf (emphasis added).

## C. The State of Michigan sues the Authority in state court for the release of PFAS resulting from the use of the FAA-mandated firefighting foam.

In September 2023, the Michigan Department of Environment, Great Lakes, and Energy (EGLE) and the Michigan Attorney General sued the Authority for "the release or threat of release" of "PFAS substances" at and from the Gerald R. Ford International Airport in

Grand Rapids, Michigan. (Compl., RE 1-1 (No. 1:23-cv-1068), PageID.14, 33.) The State specifically alleged that the Authority had "used aqueous film forming foams (AFFF) during trainings, equipment testing, and emergency response" and that "AFFF are known sources of PFAS substances . . . ." (*Id.* at PageID.16, ¶¶ 18–19.) The complaint alleged locations where and purposes for which AFFF had been used at the airport and specifically tied those uses of AFFF to the releases of PFAS at issue. (*Id.* at PageID.17, ¶ 21 ("Concentrations of PFAS substances have been detected . . . at the Airport in areas where AFFF was known to be used during equipment testing, training exercises, and related events.").) The complaint specifically ties the alleged PFAS contamination to the AFFF usage, stating that the State had notified the Authority "regarding *releases of PFAS substances* at the Airport *attributable to AFFF use.*" (*Id.* at PageID.19–20, ¶¶ 27–28 (emphasis added).)

### D.   The Authority removes the case to federal court, and the State moves to remand.

Because the State's complaint arises directly from FAA-mandated activities that used AFFF required by FAA to contain PFAS, in October 2023, the Authority removed the case from state court to the Western

District of Michigan pursuant to 28 U.S.C. § 1442(a)(1), the federal-officer-removal provision. (Notice of Removal, RE 1 (No. 1:23-cv-1068), PageID.1.) The Authority explained that it was acting under a federal agency (the FAA) in the conduct at issue in the underlying suit, because it "was obligated to train with AFFF, calibrate and test its AFFF firefighting equipment (equipment testing), respond to aircraft emergencies with AFFF, and follow the [FAA's] regulatory mandates to use AFFF that meets the Federal military specifications (MIL-SPEC) that must include PFAS . . . ." (*Id.* at PageID.5.) It also raised a federal defense, namely the government-contractor defense. (*Id.* at PageID.6.) In November 2023, the State moved to remand the case to state court, arguing (among other things) that the Authority was not assisting the FAA but rather was simply complying with federal regulations. (State Remand Br., RE 7 (No. 1:23-cv-1068), PageID.61.)

### E.   The district court issues a first remand order, finding that the Authority presented a colorable government-contractor defense but nonetheless concluding that the Authority was not acting under the FAA's supervision.

In its first opinion granting remand, the district court applied the three-part test for removal under § 1442(a)(1), which requires the

18

removing party to demonstrate that "(1) it is a 'person' within the meaning of the statute who 'acted under a federal officer'; (2) 'it performed the actions for which it is being sued under color of federal office'; and (3) 'it raised a colorable federal defense.'" (Op., RE 13 (No. 1:23-cv-1068), PageID.148.)

Starting with the third element, the district court found that the Authority "met its burden of showing that the government contractor defense is plausible," because it "has alleged that the government provided specifications for AFFF, [that] Defendant's use of AFFF conformed to those specifications, and [that] Defendant was not aware of dangers unknown to the government." (*Id.* at PageID.149 (applying three-factor test from *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988).)

Despite having recognized that the Authority had sufficiently alleged that it was following FAA specifications as a government contractor, the district court nonetheless concluded that the Authority was not "acting under" the FAA. According to the district court, the Authority "has not shown that it was hired or enlisted by the federal government to perform a certain function by its handling of AFFF and

has not shown that the FAA exercised control over its operations to such a degree that the federal government was its superior." (*Id.* at PageID.150.)

The district court also concluded that the Authority was not acting "under color of federal office." Although recognizing that § 1442(a) was amended in 2011 to cover complaints "for *or relating to* any acts under color of office" (*id.* at PageID.151 (emphasis added to show language added in 2011)), the district court relied on pre-2011 case law requiring a causal connection and held that the Authority had "not met its burden to show the relation between the FAA's regulation of AFFF and Defendant's release of PFAS." (*Id.*) As a result, the district court granted the motion to remand to state court.

## F. The remanded case proceeded in state court, while related cases brought by the State proceeded in federal court in the AFFF multidistrict litigation.

After the district court remanded the case to state court, proceedings in state court resumed (despite the Authority's request there for a stay). As a result, the State's suit against the Authority is currently proceeding in state court, even though those state-court

proceedings would be void *ab initio* if this Court reverses the district court's remand.

In those ongoing proceedings, the Authority filed, on April 15, 2024, a third-party complaint against manufacturers of AFFF that contained PFAS and that the Authority had purchased. The third-party complaint names many of the same manufacturers that the State has itself sued, in *Nessel v. E I. Du Pont De Nemours*, for manufacturing AFFF containing PFAS according to military specifications. Notice of Removal, *Nessel v. E.I. Du Pont De Nemours*, No. 1:20-cv-00787, 2021 WL 790298 (W.D. Mich. Mar. 1, 2021).

The State is seeking relief for the same injuries it is seeking against the Authority, as it is specifically seeking to hold manufacturers liable for use of the foam at airports. Complaint, *Nessel v. E.I. Du Pont De Nemours*, No. 1:20-cv-00787 (W.D. Mich. Aug. 20, 2020), RE 1, PageID.10 ¶ 15 ("Mil-Spec AFFF is also used at federally regulated civilian airports. This Complaint seeks to remedy contamination caused by the release of Mil-Spec AFFF . . . ."), PageID.13 (addressing "all airports located within the State of Michigan," "including each and every airport authority that operates or oversees one or more Airports

21

and any individual or entity responsible for conducting firefighting activities or procuring Mil-Spec AFFF for use at any Airports").

The State also has ongoing suits against manufacturers of commercial, non-military-specification foams. *Nessel v. Chemguard*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (involving commercial, non-Mil-Spec AFFF); *Nessel v. 3M Company*, No. 1:21-cv-00205 (D.S.C. June 6, 2021), ECF No. 17 (involving non-AFFF products).

The manufacturers in these three additional *Nessel* cases have successfully removed those cases to federal court under § 1442(a)(1), where they have been consolidated in multidistrict litigation in the District of South Carolina, in the *Aqueous Film-Forming Foams (AFFF) Products Liability Litigation*, MDL No. 2873.

### G. The third-party-defendant AFFF manufacturers remove the case back to the district court, and the State moves to remand its claims against the Authority.

In response to the third-party complaint, the AFFF manufacturers removed the case under § 1442(a)(1), thus returning the case to the district court. (Notice of Removal, RE 1, PageID.2.) The manufacturers argued that they were acting under the U.S. government and military

22

specifications when they produced the PFAS-containing firefighting foam. (*Id.* at PageID.9.) And the manufacturers confirmed that "the Airport has used AFFF that, under military specifications, *must* contain PFAS." (*Id.*)

The State did not dispute that the third-party AFFF manufacturers were acting under the federal government and did not move to remand the entire case. Instead, the State moved to sever the State's claims against the Authority from the Authority's third-party contribution claims against the AFFF manufacturers and to remand the State's claims. (State's Br., RE 11, PageID.185.)

The Authority opposed the severance and remand, reiterating its right to remove because it was acting under the FAA as a government contractor. (Opp'n, RE 21, PageID.276–86.) And because the State had previously represented to the district court that the Authority was not a government contractor, the Authority submitted the FAA and MDOT contracts mentioned earlier. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").

As to severance, the Authority explained how the third-party claims arose from the same occurrence: the State is suing for the Authority's use of the manufacturers' PFAS-containing AFFF, as an integral part of the firefighting equipment and activities that the FAA required the Authority to use and conduct. The Authority highlighted reasons to not sever the claims, including the presence of common questions of fact and law, the burdens of being forced to litigate in two separate forums (Michigan state court and federal court in South Carolina via multidistrict litigation (MDL)), and the benefits of bringing other potentially responsible parties into the case.

As to supplemental jurisdiction as an alternative basis for district-court jurisdiction, the Authority explained that the State's state-law claims do not predominate over the other claims because they are inextricably intertwined, legally and factually, and that nothing justified the State's reliance on the "exceptional circumstances" category of 28 U.S.C. § 1367(c).

### H.    The district court severs and again remands the State's claims to state court.

On August 6, 2024, the district court issued a second remand order (the one at issue in this appeal) as to the Authority. (Order, RE

37, PageID.597.) With respect to removal under § 1442(a)(1), the district court provided no new analysis, despite the contracts the Authority submitted. It simply stated that "the Court has twice determined that GFIAA did not demonstrate that it was acting under a federal officer when it allegedly released PFAS" and that "GFIAA does not offer any significantly novel argument that would undercut this Court's prior conclusions." (Order, ECF 37, PageID.608.)

As to severance, the district court agreed with the Authority that the claims arose out of the same transaction or occurrence. (Order, RE 37, PageID.604–05.) It agreed with the Authority that the claims involved common questions of law or fact. (*Id.* at PageID.605 (stating that the contribution claim and cost-recovery claims "may share common facts" with the State's claims)). But it concluded that overall "the questions of law and fact between the two classes of claims do not substantially overlap" and so that the factor weighed in favor of severance. (*Id.* at PageID.606.) It relied on this same reason—that the questions did not substantially overlap—to conclude that the judicial-economy factor favored severance. (*Id.*) Though acknowledging that the Authority would be "required to litigate two suits in separate forums,"

the district court concluded that the Authority would not be prejudiced by severance and that the State plaintiffs would be prejudiced by delay. The district court accepted the State's assertion that its claims would " 'grind to a halt,' " if the case is "transferred to the MDL along with the third-party claims" and if they did not get their choice of forum (because of the Judicial Panel on Multidistrict Litigation's decision to centralize these claims in the AFFF MDL). (*Id.* at 606–07.) The court accepted the assertion while admitting it "involves some speculation" (*id.* at 606), disregarding the MDL judge's experience and the reality that the State has three other cases pending in the AFFF MDL against the same AFFF manufacturers for the same alleged injuries. Addressing whether there would be different witnesses or documentary proof, the district court concluded this factor was neutral. (*Id.* at 607.)

The district court declined to exercise supplemental jurisdiction. It first concluded that the State's state-law claims substantially predominate over the third-party claims, but it did not provide any reasoning to support that conclusion. Next, the district court relied on the same prejudice analysis just discussed (alleged delay and plaintiff's choice of forum instead of the MDL) to conclude that "exceptional

circumstances" existed and supported declining jurisdiction. (*Id.* at 608.)

After the district court's order severing and remanding, the Authority's claims against the manufacturers were transferred to the AFFF MDL. (RE 43, No. 2:24-cv-4558-RMG (D.S.C. Aug. 8, 2024).) As a result, absent reversal and remand by this Court, half of this case will be litigated in Michigan state court while the other half will be litigated in the AFFF MDL.

## I.    The prior panel affirms the remand, concluding the Authority was not acting under the FAA.

A panel of this Court affirmed the first remand order in an unpublished opinion. *Michigan EGLE v. GFIAA*, No. 24-1085, 2024 WL 4867042, at *1 (6th Cir. Nov. 22, 2024). The panel acknowledged that it "must *liberally construe* § 1442," *id.* (citing *Watson*, 551 U.S. at 147 (emphasis added)), but then relied on *Mays v, City of Flint, Mich.*, 871 F.3d 437 (6th Cir. 2017), which says that "removal statutes are to be *strictly construed*, and 'all doubts should be resolved against removal.'" *Mays*, 871 F.3d at 442 (emphasis added); *Mich. EGLE*, 2024 WL 4867042 at *2. The panel concluded that the Authority did not assist the FAA because "[t]he FAA does not direct the Airport Authority's day-

to-day operations or exercise control over its employees." *Id.* at *3. The panel relied on *Mays*, a case that did not involve a government contractor, for the proposition that "receipt of federal funds tied to regulatory compliance does not constitute 'acting under' a federal officer." *Id.* And the panel concluded that the grant assurances "do not create a contractual or supervisory relationship where the Airport Authority acts on behalf of the FAA," because they were not "procurement contracts[.]" *Id.* at 4.

## SUMMARY OF ARGUMENT

The primary issue on appeal is the Authority's right to remove this case because it has been sued for conduct "relating to" acts it took while "acting under" a federal officer (here, the FAA). 28 U.S.C. § 1442(a)(1). Here, the State of Michigan sued the Authority for releases of PFAS-containing AFFF that allegedly occurred and were specifically caused when the Authority was maintaining and operating airport safety equipment under a contract with and direction from the FAA. The FAA's grant assurances contractually required the Authority to use FAA-approved AFFF that meets U.S. military specifications and to regularly test the Authority's safety equipment to ensure that the

Authority could effectively use and discharge that firefighting foam. The State's lawsuit relates explicitly and solely to this conduct taken by the Authority under the FAA, as it was the Authority's use of FAA-mandated firefighting foam containing PFAS for equipment testing, training, and emergency response that the State alleges caused the release of PFAS into the environment.

The Supreme Court has recognized that federal contractors are *acting under* federal officers because "[t]he assistance that private contractors provide federal officers *goes beyond simple compliance with the law* and helps officers fulfill other basic governmental tasks." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007) (emphasis added). Yet the district court's second remand order failed to address this point, even though this Supreme Court guidance contradicted the district court's prior conclusion that the Authority was merely complying with the law. Further, although the district court previously stated that the Authority had not shown "that it was hired or enlisted by the federal government to perform a certain function" (*id.*), it refused to reconsider that conclusion even when presented with contracts between the FAA and the Authority.

29

As to the "relates to" prong, to rule for the State this Court would have to hold that the release of firefighting foam into the environment has no connection at all to the undisputed fact that the FAA requires the foam's use. Yet one cannot say with a straight face that the use of the PFAS-containing foam is not related to the foam hitting the ground and releasing PFAS into the environment.

Further, the district court abused its discretion in deciding to sever the case and decline to exercise supplemental jurisdiction. The severance was an abuse of discretion because it requires the Authority to litigate common issues, including who should be held responsible for the alleged contamination, simultaneously in Michigan state court and South Carolina federal court. As illustrated by cases from the Fifth Circuit and the Third Circuit, it is an abuse of discretion to sever the claims in these circumstances.

The district court also abused its discretion by declining to exercise supplemental jurisdiction. As to whether the State's claims predominated over the AFFF manufacturer's claims, the district court agreed that the claims arose from the same occurrences but then failed to show that it exercised its discretion, providing no reasoning for its

predominance conclusion. As to whether "exceptional circumstances" existed, the only circumstances that the district court identified were circumstances that exist in every removal case: that the plaintiffs would not get their choice of forum and that changing forums (here, via removal and the AFFF MDL transfer) would cause delay. Those are ordinary circumstances of any removal, not "extraordinary" ones.

## STANDARD OF REVIEW

This Court "review[s] de novo the district court's determination that it lacked subject-matter jurisdiction and its consequent decision to issue a remand order." *Mays,* 871 F.3d at 442. Factual findings concerning jurisdiction are reviewed for clear error. *Certain Interested Underwriters at Lloyd's, London, England v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994).

This Court reviews a decision to sever joined claims for an abuse of discretion. *Parchman v. SLM Corp.,* 896 F.3d 728, 733 (6th Cir. 2018). Similarly, appellate courts review a district court's decision to decline to exercise supplemental jurisdiction for an abuse of discretion. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 640 (2009).

Additionally, this Court is not bound by the unpublished decision of the prior panel. The law-of-the-case doctrine applies "only loosely when we reconsider our own decisions," and not at all with respect to jurisdiction: "the law of the case doctrine does not foreclose reconsideration of subject-matter jurisdiction." *Doe*, 78 F.4th at 940 (internal quotation marks omitted); *see also Dickson v. Direct Energy, LP*, 69 F.4th 338, 349 (6th Cir. 2023) ("this doctrine has no applicability to rulings on subject-matter jurisdiction, which courts may revisit at any time"). And this Court should revisit the issue, because "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging," *Lexmark*, 572 U.S. at 126 (internal quotation marks omitted).

## ARGUMENT

## I.    The Authority is not merely complying with the law; it is acting under the FAA as a government contractor assisting the FAA in carrying out firefighting safety.

Congress provided that federal officers and persons acting under them are entitled to remove actions against them to federal court. Specifically, 28 U.S.C. § 1442(a)(1) provides in relevant part that "any of the following" may remove a suit against them to federal court: "any officer (or any person acting under that officer) of the United States or

32

of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . . ." Persons who, like the Authority, are not federal officers must satisfy three requirements to invoke the federal-officer removal statute: "(1) the defendants must establish that they acted under a federal officer, (2) those actions must have been performed under color of federal office, and (3) the defendants must raise a colorable federal defense." *Mays*, 871 F.3d at 442–43. The Authority satisfies each of these requirements.

### A.    The Authority raised a colorable federal defense, namely the government-contractor defense.

The district court correctly recognized that the Authority had raised a colorable government-contractor defense. The defense need only be "colorable," because the federal officer need not "win his case before he can have it removed." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999); *accord Bennett v. MIS Corp.*, 607 F.3d 1076, 1089 (6th Cir. 2010) (explaining that "a colorable federal defense need only be plausible" and that "a district court is not required to determine its validity at the time of removal"). Rather, § 1442(a) reflects Congress's judgment "that federal officers, and indeed the Federal Government itself, require the protection of a federal forum." *Willingham v. Morgan*,

33

395 U.S. 402, 407 (1969). Federal officers, and those acting under them, "should have the opportunity to present their version of the facts to a federal, not a state, court." *Id.* at 409. Indeed, "[o]ne of the primary purposes of the [federal officer] removal statute" is to have federal "defenses litigated in the federal courts." *Id.* at 407.

The Supreme Court has established a three-pronged test for what is known as the government-contractor defense: liability may not be imposed "when: (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Bennett*, 607 F.3d at 1089 (quoting *Boyle*, 487 U.S. at 512). And while *Boyle* articulated this test using words that align with *procurement* contracts, *Boyle* drew on case law arising from *performance* contracts and concluded that the same uniquely federal interests that limit liability for performance contracts applied to procurement contracts as well. *Boyle*, 487 U.S. at 506 ("The federal interest justifying this holding surely exists as much in procurement contracts as in performance contracts; we see no basis for a distinction."); *see also*

34

*Bennett*, 607 F.3d at 1089 ("the application of the government contractor defense has found support in the non-military context" and "in the performance contract context"). Indeed, the State has conceded that the government-contractor defense "applies to businesses acting pursuant to 'performance contracts'" (State Remand Br., RE 7 (No. 1:23-cv-1068), PageID.74 n.2), which is the situation here, where the Authority is maintaining and operating safety equipment.

Each of the three *Boyle* prongs is met here. First, the FAA established precise specifications: it required the Authority to use a firefighting foam from a government-provided list of products that met detailed military specifications. (Military Specification for AFFF, RE 10-2 (No. 1:23-cv-1068), PageID.109–120; CertAlert No. 16-05, at 2 (Sept. 1, 2016) ("[a]irport operators must ensure any AFFF purchased after July 1, 2006, meets MilSpec standards").) And all of the approved AFFF products that met military specifications necessarily contained PFAS. Interstate Technology Regulatory Council, *Aqueous Film-Forming Foam (AFFF)* Fact Sheet (Oct. 2018), https://www.maine.gov/mema/sites/maine.gov.mema/files/inline-files/ITRC%20AFFF%20Fact%20Sheet.pdf at 1 ("All AFFF products contain PFAS.").

Second, the AFFF used by the Authority conformed to those FAA specifications: the Authority used one of the specific AFFF products from the military's qualified products list that the FAA approved. Indeed, the State does not deny that the Authority used AFFF that met military specifications (*which is why the foam contained PFAS*), and the State's complaint affirmatively alleges that "AFFF are known sources of PFAS substances . . . ." (Compl., RE 1-1 (No. 1:23-cv-1068), PageID.16, ¶ 19.)

And third, "[a] defendant is not required to warn the government where "the government knew as much or more than the defendant contractor about the hazards of the product." *Albrecht v. A.O. Smith Water Prod.*, 2011 WL 5109532, at *5 (S.D.N.Y. Oct. 21, 2011); *accord Tate v. Boeing Helicopters*, 55 F.3d 1150, 1156 (6th Cir. 1995) (holding that the third *Boyle* condition was met where "the Army was aware of all the dangers of which the contractors were aware"). According to the judge presiding over the AFFF MDL, an AFFF manufacturer disclosed to the government "over 1,200 reports and studies between 1998 and 2000" that "unleashed significant scientific inquiry and investigations both within the EPA and the general scientific community." *In re*

*Aqueous Film-Forming Foams Prod. Liab. Litig.*, No. MDL 2:18-MN-2873-RMG, 2022 WL 4291357, at *10 (D.S.C. Sept. 16, 2022). That was before the FAA's 2006 CertAlert directing that airports must use AFFF meeting military specifications. In short, the federal government knew that the approved AFFF contained PFAS. Yet the FAA did not allow the use of a fluorine-free foam until 2023 (the year this lawsuit was filed), after the military specification was changed. CertAlert No. 23-07, *Availability of Fluorine Free Foam (F3) on the Navy's Qualified Products List (QPL)*, https://www.faa.gov/sites/faa.gov/files/part_139_cert_alert_23_07_F3_Release.pdf. And the FAA did not identify its concerns about PFAS to airports until it released its 2019 CertAlert. CertAlert No. 19-01, RE 10-3 (No. 1:23-cv-1068), PageID.123. Further, the Authority did not have the same information that the federal government did, because, as the State's own complaint against the AFFF manufacturers alleges, the manufacturers "deliberately and intentionally concealed the dangers of PFAS" from "the public" to protect profits and avoid responsibility. Complaint, *Nessel v. 3M et al.*, No. 1:21-cv-205, RE 1-2 (D.S.C.) at PageID.62.

In the district court, the State did not deny that the Authority met those three prongs. Instead, it sidestepped the three-pronged test that the Supreme Court established in *Boyle* and instead argued that the Authority "is not a government contractor." (State Remand Br., RE 7 (No. 1:23-cv-1068), PageID.75.) Indeed, the State not only failed to contest the *Boyle* test, but it subsequently reversed itself and conceded this key fact.

The record is clear: the Authority *is* a government contractor. The FAA pays the Authority grant money in exchange for the Authority assisting the FAA in providing airport safety (including firefighting). (*E.g.*, 2020 FAA Contract, RE 21-4, PageID.325, 339, & 340.) Indeed, there is an entire federal statutory scheme, set out in 49 U.S.C. § 47101 to § 47144, that works in conjunction with a Michigan statutory provision, MCL 259.135, to administer these contracts. And courts, including this one, routinely recognize that grant assurances are binding contracts. *E.g.*, *City of Santa Monica v. FAA*, 631 F.3d 550, 553 (D.C. Cir. 2011) (referring to the city's "*contractual obligations* under grant assurance 22") (emphasis added); *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 138 (2d Cir. 2016)

38

("Upon acceptance of an AIP grant, the grant assurances become a *binding contractual obligation* between the airport sponsor and the Federal government.") (emphasis added); *SPA Rental, LLC v. Somerset-Pulaski Cnty. Airport Bd.*, 884 F.3d 600, 602 (6th Cir. 2018) (describing grant assurances as "*binding obligations* between the airport sponsor—in this case, Somerset County—and the federal government.") (emphasis added). **The State has conceded that "grant agreements are contractual in nature."** (State Appellee Br. (No. 24-1085) at 34.)

In the end, the district court was correct in holding that the Authority had a colorable government-contractor defense, which is all that is required at this stage. As the Second Circuit has explained, "because a core purpose of the statute is to let the validity of the federal defense be tried in federal court, a defendant seeking removal need not virtually win his case, nor must his defense even be clearly sustainable on the facts." *Cuomo v. Crane Co.*, 771 F.3d 113, 115–16 (2d Cir. 2014) (cleaned up). The federal-contractor defense must just be colorable.

**B.    Because it is a government contractor for the FAA for firefighting, the Authority was "acting under" the FAA in its firefighting activities.**

Given that the Authority is a government contractor, the rest of the district court's analysis should have been easy. After all, "[t]he classic example of a person who acts under a federal officer is a government contractor." *Doe v. BJC Health Sys.*, 89 F.4th 1037, 1044 (8th Cir. 2023) (citing cases). Yet the district court concluded that the Authority had "not met its burden of establishing that it was 'acting under' a federal officer within the meaning of § 1442(a)(1)." (Op., RE 13 (No. 1:23-cv-1068), PageID.150; Op., RE 37, PageID.608 (relying on prior order's determination).) This conclusion is wrong as a matter of law.

In *Watson*, the Supreme Court explained that the relationship of a person "acting under" a federal agency is "a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office.'" 551 U.S. at 151 (quoting 18 Oxford English Dictionary 948 (2d ed.1989). "That relationship typically involves 'subjection, guidance, or control.'" *Id.* (quoting Webster's New International Dictionary 2765 (2d ed.1953)). Further, "precedent and

40

statutory purpose make clear that the private person's 'acting under'
must involve an effort to *assist*, or to help *carry out*, the duties or tasks
of the federal superior." *Id.* at 152; *see also Bennett*, 607 F.3d at 1086.
The Supreme Court expressly cited government contractors as an
example of *assisting* the federal agency: "The *assistance that private
contractors provide* federal officers *goes beyond simple compliance with
the law* and helps officers fulfill other basic governmental tasks."
*Watson*, 551 U.S. at 153 (emphasis added); *Bennett*, 607 F.3d at 1086.

Given this plain direction in *Watson*, numerous courts have
recognized that government contractors satisfy the "acting under"
prong. *E.g.*, *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 291 (5th
Cir. 2020) (en banc) (holding that the defendant's "federal contract with
the Navy" satisfies the condition that "it acted 'pursuant to a federal
officer's directions'"); *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255
(4th Cir. 2017) ("Foster Wheeler's status as a Navy contractor readily
satisfies the requirement that it have acted under the Navy, as used in
§ 1442(a)(1)"); *Doe*, 89 F.4th at 1044 (8th Cir.) ("The classic example of a
person who acts under a federal officer is a government contractor.").

Indeed, the case law in this area recognizes that a *combination* of "detailed regulation, monitoring, and supervision" of a contractor show that it is acting under a federal officer. *Bennett*, 607 F.3d at 1088 ("[W]e conclude that the *contractual relationship* between MIS and the FAA was an unusually close one, involving *detailed regulation, monitoring, and supervision.*") (cleaned up); *Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 F. App'x 619, 622 (6th Cir. 2016) ("*Detailed regulation, monitoring, or supervision of a contractor*, however, may signify a relationship 'unusually close' enough to 'establish the type of formal delegation" that falls within § 1442(a).'") (first emphasis added); *Watson*, 551 U.S. at 153 ("*Government contractors* fall within the terms of the federal officer removal statute, at least when the relationship between the contractor and the Government is an unusually close one involving *detailed regulation, monitoring, or supervision.*") (emphasis added).

Put simply, the combination here of detailed regulation *and* a contractual relationship cuts in favor of, not against, recognizing that the Authority was acting under the FAA as a government contractor, following the FAA's specific supervision and direction as to what AFFF

to use and how to use it at this commercial airport. *Watson* instructs that "regulation *alone*" is insufficient, but it also explains that regulation *plus* a contract does count as assistance: "The assistance that private contractors provide federal officers *goes beyond simple compliance with the law* and helps officers fulfill other basic governmental tasks." *Watson*, 551 U.S. at 153. Further, here it is the contract that requires compliance with the FAA's nonbinding advisory circulars and CertAlerts, so it is the contract that specifies the use of the PFAS-containing AFFF. (*E.g.*, 2020 FAA Contract, RE 21-4, PageID.348 (grant assurance that the Authority "will carry out the project in accordance with policies, standards, and specifications approved by the Secretary including, but not limited to, the advisory circulars").)

Here, the FAA engages in all three: "detailed regulation, monitoring, and supervision." *Bennett*, 607 F.3d at 1088. The FAA controls the manner in which the Authority, in operating an interstate and international commercial airport, maintains, tests, and operates firefighting equipment, specifically requiring that it use AFFF from a specific federal list that includes only PFAS-containing foams. CertAlert

No. 16-05, at 2–3 (Sept. 1, 2016). In fact, if the Authority cannot show the FAA that it has conducted periodic testing of the firefighting equipment, "*the FAA will require the airport operator to discharge AFFF during the airport's periodic inspection . . . .*" CertAlert No. 19-01, RE 10-3 (No. 1:23-cv-1068), at PageID.122 (emphasis added); *see also* Carr Affidavit, RE 21-8, at PageID.460 ¶¶ 9–10. For the FAA to say, in effect, "use AFFF containing PFAS in these specific ways" is the same level of specificity and control present when a contractor manufactures products for the government—like when the Navy essentially says, "make boilers containing asbestos for Navy ships." *See Sawyer*, 860 F.3d at 255 ("[T]here can be no question that Foster Wheeler was a 'person acting under' the Navy when it constructed the boilers with asbestos that allegedly harmed Morris.").

Despite all this, the district court and the prior panel mistakenly held that the Authority was not "acting under" a federal officer. (Op., RE 13 (No. 1:23-cv-1068), PageID.150.) The district court noted that "[s]imply complying with a regulation is insufficient to show an acting-under relationship" (*id.* (citing *Watson*, 551 U.S. at 152), but it failed to follow the guidance that *Watson* gave on the very next page—again,

44

that "[t]he assistance that private contractors provide federal officers *goes beyond simple compliance with the law* and helps officers fulfill other basic governmental tasks." 551 U.S. at 153 (emphasis added); *accord Bennett*, 607 F.3d at 1086 (quoting this language from *Watson*). And the panel similarly discussed only the part of *Watson* that applied to a non-contractor. *Mich. EGLE*, 2024 WL 4867042 at *3, *4.

The part of *Watson* that the panel overlooked is significant, because in *Watson* the defendant (Phillip Morris) argued that "if close supervision is sufficient to turn a private contractor into a private firm 'acting under' a Government 'agency' or 'officer,' does it not do the same when a company is subjected to intense regulation." *Watson*, 551 U.S. at 153. The Supreme Court answered that question by pointing out that government contractors are different from other regulated entities: "The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Id*. And the panel overlooked this principle a second time when it relied solely on *Mays* for its "acting under" analysis, disregarding the fact that the MDEQ defendants in *Mays* were

45

not government contractors. *Mays*, 871 F.3d at 444 ("In the present case, . . . there is no contract . . . between the MDEQ and the EPA.").

The district court also stated that the Authority "has not shown that it was *hired or enlisted* by the federal government *to perform a certain function* by its handling of AFFF and has not shown that the FAA exercised control over its operations to such a degree that the federal government was its superior." (Op., RE 13, PageID.150 (emphasis added).) But a government contractor is someone that is hired by the federal government to perform a certain function. *E.g.*, https://dictionary.cambridge.org/us/dictionary/english/contractor (defining "contractor" in the business context as "a person or company that is *paid by another* company *to work on a particular project* for a particular amount of money") (emphasis added). To be "paid by another" is to be "hired or enlisted," and "to work on a particular project" is "to perform a certain function." This is precisely the sum and substance of the FAA grant assurances with AFFF strings attached to those federal funds.

In the context of a government contract, the federal agency is acting as a superior and exercising control. The FAA dictates with

specificity how the tasks must be performed (such as by using AFFF that meets strict military specifications), and the FAA supervises that performance (such as by requiring testing and by requiring discharges onto the ground). *E.g.*, CertAlert No. 19-01, *Aqueous Film Forming Foam (AFFF) Testing at Certificated Part 139 Airports* at 1 (Jan. 17, 2019), RE 10-3, PageID.122.

Put simply, a contractor is acting under the direction, supervision, and monitoring of the agency under which it is contracted, at least as to the specific obligations imposed by the contract, which for the Authority include maintaining, operating, and testing firefighting equipment using AFFF containing PFAS. The FAA provided guidance and functioned as the Authority's superior on the precise issue at hand—the use of AFFF containing PFAS—and that task is required by contract.

Further, the assistance that the Authority provided the FAA was assistance in fulfilling an important federal government function. Providing for aviation safety, including firefighting operations, is the FAA's responsibility. 49 U.S.C. § 106(g) (FAA responsibility for "aviation safety"); 49 U.S.C. § 44706(b) (requiring the FAA to issue airport operating certificates containing "terms necessary to ensure

safety in air transportation," including conditions related to "operating and maintaining adequate safety equipment, including firefighting and rescue equipment"). In fact, federal law is so prescriptive that "federal law establishes the standards of care in the field of aviation safety and thus preempts the field from state regulation." *Greene v. B.F. Goodrich Avionics Systems, Inc.*, 409 F.3d 784, 795 (6th Cir. 2005).

Firefighting, the particular aspect of aviation safety at issue, is also a classic government function, as shown by the fact it is regularly found to be a government function in cases addressing governmental immunity or state action. *E.g.*, *New Albany Main St. Properties v. Watco Companies, LLC*, 75 F.4th 615, 629 (6th Cir. 2023) ("Unsurprisingly, the [state] court has also held that 'firefighting' qualifies as a statewide government function."); *Janusaitis v. Middlebury Volunteer Fire Dep't*, 607 F.2d 17, 22 (2d Cir. 1979) ("fire protection is a function so traditionally associated with sovereignty that its performance, even by an otherwise 'private' entity, constitutes state action"); *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 343 (4th Cir. 2000) ("Although the Supreme Court has not specifically addressed whether fire protection constitutes a traditional and exclusive state action *per se*,

the Court's treatment of the issue acknowledges, at the very least, that fire protection may be an exclusive state function.") (some quotation marks omitted). Here, the military specifications for AFFF, which the FAA imposes in its role of providing for interstate aviation safety, further support that firefighting in this context is a federal government function.

The fact that the FAA delegated this aviation-safety function to airports via contract does not make it any less a government function; to the contrary, it shows that the Authority is assisting the FAA. *Watson*, 551 U.S. at 153. Consider, for example, that Congress could have created a federal agency to address *fire-related safety* at airports and called it the Transportation Fire Administration, parallel to how Congress created the Transportation Security Administration to address *security-related safety*. But instead, Congress chose to ensure firefighting safety at airports through the FAA, and the FAA implements that function through requirements in its grant contracts with airports.

In short, the assistance that the Authority provides to the FAA "goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *Watson*, 551 U.S. at 153.

### C. The State's suit, which ties PFAS releases to the FAA-mandated AFFF, relates to the FAA requiring the Authority to use the PFAS-containing AFFF.

The district court also erred in maintaining its prior conclusion that the Authority had "not met its burden to show the relation between the FAA's regulation of AFFF and Defendant's release of PFAS." (Op., RE 13 (No. 1:23-cv-1068), PageID.151.)

The district court started its analysis by noting that, before § 1442 was amended in 2011, it required that "the subject of the complaint was 'for any act under color of office.'" (*Id.* at PageID.152.) Interpreting that version of the statute, the Supreme Court relied specifically on the word "for" when concluding that § 1442 imposed a causal connection element. *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999).

But in 2011, Congress changed "for" to "for or relating to." As the en banc Fifth Circuit observed, "[t]his change plainly expresses that a civil action *relating to* an act under color of federal office may be removed (if the other statutory requirements are met)." *Latiolais*, 951

50

F.3d at 292. As the Fifth Circuit further explained, "the Supreme Court has recognized" that "the ordinary meaning of the words 'relating to' is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)) (cleaned up). As a result, in the 2011 change "Congress broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." *Id.*

The circuits that have addressed this issue agree that Congress's change to the language matters. *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020) ("We . . . now join all the courts of appeals that have replaced causation with connection and expressly adopt that standard as our own."); *see also In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 471 (3d Cir. 2015) ("it is sufficient for there to be a 'connection' or 'association' between the act in question and the federal office"); *Sawyer*, 860 F.3d at 258 (4th Cir.) ("there need be only a *connection* or *association* between the act in question and the federal

51

office") (cleaned up); *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 715 (8th Cir. 2023) ("[T]he causal connection required by § 1442(a)(1) is for the activity in question to relate to a federal office.") (citations omitted); *DeFiore v. SOC LLC*, 85 F.4th 546, 557 n.6 (9th Cir. 2023) ("We read our 'causal nexus' test as incorporating the 'connected or associated with' standard reflected in Congress's 2011 amendment and the Supreme Court's decisions."); *Caver v. Cent. Alabama Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017) ("The phrase 'relating to' is broad and requires only a 'connection' or 'association' between the act in question and the federal office.") (some quotation marks omitted). In fact, the Supreme Court has granted certiorari to address whether any causal-nexus test survived the 2011 amendment.

Https://www.supremecourt.gov/docket/ docketfiles/html/public/24-813.html.

The district court acknowledged this new language, but it did not actually apply it. If the district court had followed the statute's plain text, it would have recognized that the act in question (the release of PFAS from AFFF into the environment) bears at least a connection or association with the FAA's requirement that the Authority use AFFF

52

containing PFAS. In fact, the State's own complaint alleges that there is a direct causal relationship between the PFAS releases and the use of the FAA-specified AFFF: "Concentrations of PFAS substances have been detected in the [environment] at the Airport in areas where AFFF was known to be used during equipment testing, training exercises, and related events." (Compl., RE 1-1 (No. 1:23-cv-1068), PageID.17, at ¶ 21; *id.* at ¶ 22 ("Areas of known releases of AFFF at the Airport include . . . the former firefighting training area" and "an apron area near the Aircraft Rescue Fire Fighting (ARFF) building").) As noted above, the FAA directed all these alleged firefighting activities. It is simply not accurate to say that there is no relationship or connection between (1) the FAA requiring the Authority to use PFAS-containing AFFF at the airport and (2) the State's suit against the Authority for the release of PFAS resulting from the use of the AFFF at the airport.

In deciding that the Authority's use of AFFF that followed FAA specifications and so contained PFAS did not even relate to the State's suit based on the release of PFAS at firefighting training areas, the district court relied on a single sentence from an unpublished decision of this Court. In *Ohio State Chiropractic*, this Court held that the

defendant in that case had failed to satisfy the "acting under" prong. 647 F. App'x at 624. The defendant there contracted with the federal government to administer certain Medicare payments when processing insurance claims, *id.* at 621, and this Court held that it was not assisting the federal government in carrying out a government function; it was in "an arms-length relationship" with the government agency at issue and was not "perform[ing] a job that the government would have to perform itself if it did not contract with private firms[.]" *Id.* at 623– 24. Having reached that conclusion, the Court acknowledged that any analysis of the "relating to" language was admittedly dicta: after concluding that the defendant was not "acting under" a federal officer, the opinion admitted that "[o]ur analysis could end here." *Id.* at 624. In any event, this Court noted that "the more expansive language" of the post-2011 § 1442(a)(1) "should not be read so broadly that it renders the 'acting under' requirement superfluous." *Id.* at 624–25. In short, it was making the simple point that the "acting under" requirement "is distinct from the requirement that the alleged conduct be 'for or relating to any act under color' of federal office," *id.* at 625, and so a connection alone, without "acting under," would be insufficient.

In the end, the district court required that the Authority establish that "the federal regulations *mandated*"—i.e., *caused*—"its release of PFAS" to show it was "acting under" a federal officer. (Op., RE 13, PageID.152 (emphasis added).) While the Authority believes the proofs at trial may well establish that the FAA caused the PFAS releases at issue herein, that is not the standard for removal—all the statute requires is that the PFAS release *relates to* the FAA-specified use of the PFAS-containing foam, and the State's own complaint demonstrates that minimal connection or association. (*E.g.,* Compl., RE 1-1, PageID.16–17, at ¶¶ 18–22 (discussing use of the AFFF and stating the AFFF is a source of PFAS).)

To rule for the State on this point at this threshold pleading stage, the Court would have to conclude that the release of PFAS from AFFF into the environment does not relate—*i.e.,* has *no connection at all*—to the undisputed fact that the FAA requires the use of PFAS-containing AFFF. That is simply not true. Consider, for example, when AFFF is sprayed on an airplane that is on fire; one cannot say with a straight face that the use of the AFFF containing PFAS is not related to the AFFF hitting the ground and causing PFAS to enter the environment.

And even stepping back from an emergency to consider the context of firefighting training and equipment testing, it is not accurate to say that using the PFAS-containing firefighting foam during FAA-mandated firefighting training is not related to improper disposal of PFAS if some of the PFAS-containing foam makes its way into the environment. Perhaps that is why the State does not deny that its own complaint alleges a direct causal relationship between the PFAS releases and the use of the FAA-specified AFFF: "Concentrations of PFAS substances have been detected in the soil, shallow groundwater, deep groundwater, and stormwater at the Airport *in areas where AFFF was known to be used* during equipment testing, training exercises, and related events." (Compl., RE 1-1 (No. 1:23-cv-1068), PageID.17, at ¶ 21 (emphasis added); *id.* at ¶ 22 ("Areas of known releases of AFFF at the Airport include . . . the former firefighting training area" and "an apron area near the Aircraft Rescue Fire Fighting (ARFF) building").) The facts here satisfy the "relates to" requirement.

II.    **The district court abused its discretion by severing the claims and declining to exercise supplemental jurisdiction.**

    A.    **The district court abused its discretion by severing the substantially overlapping third-party contribution claims and issues, such as causation, which resulted in the Authority having to litigate the same issues in Michigan and South Carolina.**

The circumstances in this case are similar to two cases in which the Fifth Circuit and the Third Circuit each held that a district court abused its discretion in severing claims. In both cases, the severance occurred in conjunction with a transfer order (like here, where transfer to the MDL was anticipated and has occurred), the claims were factually intertwined, and causation issues among the parties (like here, where there are contribution claims) supported resolving liability in a single case.

In *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), a company that promoted access to firearms (including by sharing 3D printing files for firearms) sued to challenge enforcement actions taken by officials from nine states. *Id.* at 422. In the suit, which the company brought in the Western District of Texas, the company later joined the State Department as a defendant for failing to comply with a settlement agreement about the licensing of the 3D printing files. *Id.* at 422–23.

One of the state officials, the New Jersey Attorney General, moved to sever the case against him and to transfer it to the District of New Jersey, and the district court granted that motion. *Id.* The Fifth Circuit reversed. Focusing on the combined impact of severance and transfer, the Fifth Circuit noted that a court "should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred *that partial transfer would require the same issues to be litigated in two places.*" *Id.* at 428 (quoting *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984)) (emphasis added). The Fifth Circuit noted that " '[m]anifestly,' Plaintiffs are disadvantaged by the expense and inconvenience of having to litigate in two disparate fora and by the possibility of inconsistent results." *Id.* (quoting *Liaw Su Teng*, 743 F.2d at 1148). "And the public has an interest in the comparative speediness and cost-savings from utilizing a single forum for the issues arising out of one episode." *Id.* On the issue of judicial economy, it noted that when severance and transfer both occur, "[s]everance and transfer requires two courts to engage in the work of one, prompting serious concerns about duplication of judicial resources, the consistency of rulings, and litigation costs." *Id.* at 429.

The Fifth Circuit also faulted the district court ignoring "that the principal claims against both defendants are temporally and factually intertwined to the extent that litigation in separate courts would largely overlap," including because "the subsidiary claims are dependent upon the primary claims" in the case. *Id.* at 430. The claims at issue could not "be understood by a factfinder without investigating and telling the whole story," and "[s]imilarly, having to tell the same story in two courts would abuse Plaintiffs and the judicial process." *Id.* This was especially true given the interrelated issue of causation in the case: "Sorting out cause and effect for these claims demands a single factfinder and judicial resolution." *Id.* These same considerations mandate reversal here.

The Third Circuit recognized the importance of these same factors in *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28 (3d Cir. 1993). In that case, a corporation appealed an order that would transfer the case from the Eastern District of Pennsylvania to the Southern District of Texas, and the respondent asked the Third Circuit uphold the transfer or sever the action. After concluding that the transfer was improper, the Third Circuit refused to order the district court to sever

the case, concluding "that it would not be consistent with a sound exercise of discretion for the district court to grant severance in this case." *Id.* at 34. In other words, the Third Circuit concluded that it would be an abuse of discretion to grant severance. In the case, the plaintiffs had sued two defendants for damaging the plaintiffs' cargo that was being transported on a ship, alleging that one defendant "fail[ed] to design adequately a seafastening plan" and that the other "fail[ed] to perform proper engineering and rigging services" before shipping. *Id.* at 29. The Third Circuit noted that the causation question was "central to the ultimate determination as to responsibility for the alleged damage to petitioners' cargo." *Id.* at 34. Citing the Fifth Circuit, the Third Circuit also noted that " '[the court] should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that *partial transfer would require the same issues to be litigated in two places*.' " *Id.* at 33–34 (quoting *Liaw Su Teng*, 743 F.2d at 1148) (emphasis added).

Just as in *Defense Distributed* and *Sunbelt*, it was an abuse of discretion to sever the State's AFFF claims from the Authority's contribution claims against the AFFF manufacturers under the

circumstances here. The State and the district court knew about the multidistrict litigation already addressing claims against manufacturers of PFAS-containing AFFF in South Carolina, especially because the State has several other AFFF cases against the same manufacturers with overlapping claims for relief already in the AFFF MDL, and thus knew that severing the claims would force the Authority to litigate the same issues in two different places—in Michigan state court and in South Carolina federal court. It would "[m]anifestly" prejudice the Authority to suffer "the expense and inconvenience of having to litigate in two disparate fora and by the possibility of inconsistent results." *Def. Distributed*, 30 F.4th at 428; *Sunbelt*, 5 F.3d at 33–34 (denying severance where "partial transfer would require the same issues to be litigated in two places") (internal quotation marks omitted).

Here the same issues would need to be resolved by both courts. Most fundamentally, the same core legal question must be resolved in both cases:

- Should the Authority acting under federal officers be liable if environmental contamination results from following federal

officers' direction to use specific products produced by third-party chemical manufacturers?

And on top of that central question, there are multiple other common issues:

- Is there PFAS contamination?

- If so, what is (are) the source(s) of the alleged contamination?

- Who and what caused that PFAS contamination?

- What is the extent of that contamination and what are the alleged environmental impacts?

- Is there any necessary remedial relief, and if so, what is it?

There will be numerous common questions of law and fact given that, as the district court recognized, the cases arise from the same transaction or occurrence. (Order, RE 37, PageID.604–05.) And while the district court argued that any third-party contribution or indemnification claim would arise only if the State prevails against the Authority, the Fifth Circuit recognized that the existence of dependent claims is an example of overlap that weighs *against* severance, not a

factor favoring severance. *Def. Distributed*, 30 F.4th at 430 ("the

subsidiary claims are dependent upon the primary claims").

Further, the common question of causation is a predominating

issue. *Def. Distributed*, 30 F.4th at 430 ("Sorting out cause and effect for

these claims demands a single factfinder and judicial resolution."). Both

cases focus on one occurrence (the alleged release of PFAS at the

airport) and on who should be held responsible for that PFAS

contamination. It was the FAA that required the Authority to use only

FAA-approved AFFF containing PFAS. It was the U.S. Department of

Defense that required AFFF manufacturers to use PFAS. The State of

Michigan wants to hold the Authority liable for following the federal

government's requirement that it use PFAS-containing foam, and if the

Authority may be held liable for the federal government's decisions,

then determining whether the chemical manufacturers should also be

liable for the federal government's decision should be resolved in the

same case. *See Sunbelt*, 5 F.3d at 34 ("To grant severance here would

place each defendant in the position of being able to defend by asserting

the absent party's negligence."); *Def. Distributed*, 30 F.4th at 428

(reversing severance in light of "the possibility of inconsistent results"

from "two disparate fora"). Importantly, the State has multiple related and overlapping AFFF cases already in the MDL against many of the same manufacturers that are named as third-party defendants here and potentially with overlapping damages claims, so it is hardly unfair to have all these State AFFF claims in the same MDL. Severing the claims here was an abuse of discretion.

Additionally, numerous Part 139 airports around the country have contracts containing the same grant assurances. If cases like this are remanded to state court and if state courts do not uphold the federal government-contractor defense that arises from these contracts, then federally regulated airports will be subject to a patchwork of different state laws arising from the same facts—airports use of FAA-mandated AFFF.

## B.    The district court abused its discretion by declining supplemental jurisdiction.

Section 1367(c) sets out four conditions for the exercise of supplemental jurisdiction, two of which are relevant here. "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (2) the claim substantially predominates over the claim or claims over which the district court has original

jurisdiction . . . or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Here, the district court concluded that the State's claim "substantially predominates" over the Authority's claims against the third-party defendants and that "exceptional circumstances and compelling reasons exist" for declining jurisdiction. (Order, RE 37, PageID.608.)

> **1.   The district court failed to exercise its discretion as to the predominance condition, as it simply stated its conclusion without providing any reasoning.**

As to the "substantially predominates" condition, the district did not provide any analysis on this condition. Its lone paragraph on this condition just states its conclusion, without any explanation for *why* the State's claims substantially predominate. (*Id.*) The district court could not have been relying on its earlier conclusion regarding severance—that "the questions of law and fact between the two classes of claims do not substantially overlap" (*id.* at PageID.606)—because even if the issues did not substantially overlap, that does not answer which set of issues predominates over the other. (And again, the issues do overlap, as evidenced by the district court's own finding that the claims arise from the same transaction or occurrence. (Order, RE 37, PageID.604–

05.)) Reaching a decision "without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion . . . ." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178 (1962), and addressing discretion in context of amending a complaint); *see also Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 883 (6th Cir. 2016) (explaining, in addressing discretion over attorney fee awards, that "we have found an abuse of discretion where a district court fails to explain its reasoning adequately"); *Cooper v. Glen Oaks Healthcare LLC*, No. 22-5570, 2023 WL 165961, at *1 (6th Cir. Jan. 12, 2023) (stating that "to receive deference, a district court still must explain its ruling" and citing cases).

Here, as already explained, the predominant question is whether government contractors (*i.e.*, the Authority and the manufacturers) should be held liable for potential harms that resulted from them following government requirements. It is the predominant issue because it would completely defeat liability. Because the district court did not provide any explanation for concluding that the State's claims predominate over the Authority's claims, and because that conclusion

does not correlate with the realities of this case, the predominance condition does not support the district court declining supplemental jurisdiction.

### 2.    The district court abused its discretion in concluding that the ordinary circumstances of removal satisfy the "exceptional circumstances" condition.

As to the "exceptional circumstances" condition, the district court identified three reasons. First, it relied on a preference for the plaintiffs' choice of forum. (Order, RE 37, PageID.608.) That reason is not exceptional, as required by § 1367(c)(4), since it is true in *every* case that involves removal of a plaintiff's claims to federal court from the original state-court forum. Second, the district court said that changing the forum after a remand would be a hardship for the State's case. (*Id.*) Once again, there is nothing exceptional about having a dispute over removal in a case, or that a case might return to federal court after a remand to state court. Third, the district court stated that transferring the case to the MDL "will likely delay the adjudication" of the State's claims. (*Id.*) This conclusion contradicts the JPML decision that these AFFF cases should be centralized in the South Carolina MDL, and if affirmed could undermine that MDL by allowing other plaintiffs to

67

argue about a speedier resolution in a different court and to seek transfer or remand.

There is nothing "exceptional" about these circumstances, which all boil down to concerns about a forum change, either to state court or to another federal court. Indeed, there is no reason to think that Congress thought that the simple application of removal and transfer statutes would amount to an "extraordinary" circumstance. The district court abused its discretion in refusing to exercise supplemental jurisdiction here.

## CONCLUSION

For these reasons, this Court should reverse the district court's order severing and remanding the case to state court and hold that the district court had jurisdiction over this case under 28 U.S.C. § 1442(a)(1) upon the Authority's timely and proper removal, or that the district court abused its discretion in granting severance and declining to exercise supplemental jurisdiction.

Respectfully submitted,

Dated:  October 24, 2025

By  /s/ *Aaron D. Lindstrom*

John Sheehan
**EARTH & WATER LAW**
1455 Pennsylvania Ave., NW
Suite 400
Washington, DC 20004
(202) 280-6362

Charles M. Denton
Aaron D. Lindstrom
**BARNES & THORNBURG LLP**
171 Monroe Ave NW, Ste. 1000
Grand Rapids, Michigan 495503
(616) 742-3974
aaron.lindstrom@btlaw.com

*Attorneys for Appellant*
*Gerald R. Ford International*
*Airport Authority*

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Federal Rule of Appellate Procedure 32

(a)(7)(B) and Sixth Circuit Rule 32, the attached opening brief is

proportionately spaced, has a typeface of 14 points, or more and

contains 12,969 words.

_/s/  Aaron D. Lindstrom_

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2025, I electronically filed the foregoing **APPELLANT'S OPENING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/   Aaron D. Lindstrom*

## ADDENDUM – DESIGNATION OF RECORD DOCUMENTS

| Record Entry | Description | Page ID Range |
|---|---|---|
| **W.D. Mich. Case No. 1:24-cv-00520** | | |
| 1 | Notice of removal by Tyco Fire Products and Chemguard | 1–50 |
| 11 | State's brief for severance and remand | 179–206 |
| 21 | Authority's opposition to the State's motion to sever and remand | 259–290 |
| 21-4 | 2020 FAA contract | 323–364 |
| 21-5 | 2021 FAA contract | 366–408 |
| 21-6 | 2020 MDOT contract | 410–430 |
| 21-7 | 2021 MDOT contract | 432–455 |
| 21-8 | Carr affidavit | 457–462 |
| 37 | Opinion and order granting severance and remand | 597–609 |
| 43 | Notice of appeal | 700–702 |
| **W.D. Mich. Case No. 1:23-cv-1068** | | |
| 1 | Authority's notice of removal under 28 U.S.C. § 1442(a)(1) | 1–9 |
| 1-1 | Complaint | 13–33 |
| 7 | State's brief in support of its motion for remand | 55–78 |
| 10 | Authority's opposition to remand | 82–100 |

| Record Entry | Description | Page ID Range |
|---|---|---|
| 10-1 | Letter from FAA to Authority | 101–107 |
| 10-2 | Military Specification, Fire Extinguishing Agent, Aqueous Film Forming Foam (AFFF) Liquid Concentrate, Six Percent, for Fresh and Sea Water (Nov. 21, 1969) | 108–120 |
| 10-3 | CertAlert No. 19-01, *Aqueous Film Forming Foam (AFFF) Testing at Certificated Part 139 Airports* (Jan. 17, 2019) | 121–24 |
| 13 | Opinion and order granting remand | 144–54 |
| 19-1 | CertAlert No. 06-02, *Aqueous Film Forming Foam (AFFF) Meeting MIL-F-24385* (Feb. 8, 2006) | 189–90 |
| 25 | Opinion and order denying reconsideration | 233–38 |